NEIGHBORS, Plaintiff-Appellee, v. ADMINISTRATOR, BUREAU OF WORKMEN'S COMPENSATION, and TERNSTEDT DIVISION, GENERAL MOTORS CORPORATION, Defendants-Appellants.

Ohio Appeals, Tenth District, Franklin County.

No. 6092.   Decided July 7, 1959.

Barkan & Barkan, Robert H. Burns, of Counsel, Columbus, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr., of Counsel, Columbus, for defendant-appellant, Ternstedt Division, General Motors Corp.

Mark McElroy, Atty. Genl., Columbus, for James L. Young, Administrator, Bureau of Workmen's Compensation.

(WISEMAN, J, of the Second District, sitting by designation in the Tenth District.)

## OPINION

By WISEMAN, J.

This is an appeal on questions of law from the judgment of the Common Pleas Court of Franklin County, rendered on the verdict of a jury returned in favor of the plaintiff, determining that the plaintiff was entitled to continue to participate in the Workmen's Compensation Fund of Ohio.

Six separate errors are assigned. Assigned errors one, two, three and four are related and are discussed as one. The appellant first claims the trial court erred in overruling appellant's objection to the hypothetical question asked Dr. Cowles. The hypothetical question embraced two facts which appellant claims were not proven. That part of the question is as follows:

"* * * you may assume further that since the accident she has suffered pain in the hip and radiation of pain down the leg in the nature of a strain to the hip, **possible internal bleeding of a joint with a residual arthritis of the joint.**" (Emphasis ours.)

The appellant contends that there was no factual development respecting "possible internal bleeding of a joint," or "a residual arthritis of the joint." On page 51 of the record, Dr. Cowles testified as follows: "In other words, it could be a traumatic arthritis; that type of thing could definitely cause it."

In defendant's Exhibit No. 1, admitted into evidence, which was an application for an adjustment of claim, in answer to question No. 2, Nature of Injury, is found this statement: "Muscle strain with probable hemorrhage into the right hip joint capsule."

In *Morrissey v. Industrial Commission of Ohio*, 98 Oh Ap 213, 128 N. E. (2d) 815, the first paragraph of the syllabus is as follows:

"Where the statements contained in a hypothetical question to an expert witness are substantially those established as material facts by testimony, no prejudicial error results in permitting the hypothetical question to be answered as framed, provided such variation as exists is not sufficient to mislead the witness who answers, or the jury."

In *Peppers v. Ford Motor Company*, 30 Abs 369, the first paragraph of the syllabus is as follows:

"Where the defense moves for judgment after all evidence is in, both before and after verdict, full value and weight must be given any evidence in the case, whether introduced by the plaintiff or not."

In our opinion the hypothetical question was properly propounded. With respect to assignments of error one, two, three and four, ap-

pellant contends that the plaintiff did not prove a "direct or proximate" causal relationship between the injury and the disability, and requests judgment be entered for the defendant. In support of its contention, the defendant cites **Fox v. Industrial Commission, 162 Oh St 569, 125 N. E. (2d) 1**, and **Senvisky v. Truscon Steel Division of the Republic Steel Corporation, 168 Oh St 523**. It is conceded that in the Fox case (also in opinion in Schiele v. Industrial Commission, a companion case), the court held that a deficiency in the hypothetical question on the point in question may be cured in the answer to the question. In the · Fox case the medical witness was asked whether there was "a causal relationship between the plaintiff's injury and the heart ailment." An objection being sustained, a proffer was made as follows: "I believe there is a causal relationship." The court held that the exclusion of this answer was error; that the error constituted some evidence of causal relationship. However, the court on page 577 said,

"However, the evidence here proffered was insufficient in itself to prove a **direct or proximate causal relationship**, and in the absence of other evidence to cure the insufficiency, its exclusion was harmless error." (Emphasis ours.)

In the Schiele case, on pages 578 and 579, the record shows that the medical witness was asked whether there was any "causal connection between the lifting incident and the subsequent harm or disability." An objection being sustained, this proffer was made:

"It is my opinion that there was a **direct causal relationship** between the occurrence in June 1949, and the symptoms which followed, and the findings at the time of my examination." (Emphasis ours.)

On page 579 of the opinion, the court held that the refusal to admit the answer was error on the ground that the answer fully met the legal requirements to prove proximate cause. In the Fox case the court stated the principal question for determination as follows:

"Where, in a hearing on a workmen's compensation claim, a hypothetical question is propounded to a medical witness for the purpose of establishing causal connection between an accidental injury and succeeding harm or disability, may such question inquire as to 'a causal relationship' or must it inquire as to 'a **direct or proximate** causal relationship.' " (Emphasis ours.)

On page 576, the court very definitely answered the above question as follows:

"We, therefore, conclude that in order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence not only that his injury arose out of and in the course of his employment but that a direct or proximate causal relationship existed between his accidental injury and his harm or disability; and where medical evidence is necessary to establish such relationship, that evidence must show that his accidental injury was or probably was a direct or proximate cause of the harm or disability."

In the **Senvisky case, 168 Oh St 523**, the medical witness testified that there was a "causal relationship" between the injury and the dis-

ability, but the record was silent respecting the "direct or proximate causal relationship." On page 528, the court in its opinion said:

"Although plaintiff's two medical expert witnesses both testified, in answer to hypothetical questions, that there was 'a causal relationship' between decedent's injury and death, their reasons for such opinions were, in the words of the Fox case, as quoted above, 'insufficient in * * * (themselves) to prove a direct or proximate causal relationship.'" (Emphasis ours.)

We come now to consider the evidence in the instant case. The medical witness was asked a hypothetical question which concluded as follows:

"Q. * * * now, Doctor, taking the facts as I have given them and excluding from your own mind certain other facts as I have requested, do you have an opinion based on a reasonable degree of medical certainty whether the conditions which I have described in this hypothetical question such as the strain and arthritis are due to or probably related to or aggravated by the incident described in the hypothetical question?

"Now, do you have an opinion, Doctor?

"A. Yes.

"MR. HERROLD: I object, Your Honor.

"THE COURT: Overruled.

"MR. HERROLD: Note my exception.

"Q. And what is that opinion, sir?

"MR. HERROLD: Objection.

"THE COURT: Overruled.

"THE WITNESS: I think it could and did.

"Q. Now could you explain that answer, sir?

"MR. HERROLD: Objection.

"THE COURT: Overruled.

"Q. You may answer.

"A. There is no question about her having had injury to the other hip and the short leg being a little more short it would be more difficult for her to keep her balance and she would be much more apt to injure the good one with that sort of a history. In other words, it could be a traumatic arthritis; that type of thing could definitely cause it.

"Q. You say it could?

"A. Yes."

Obviously, the questions and answers in the case at bar are not of the same legal import as the questions and answers in the Fox and Senvisky cases. In the instant case, the medical witness was not asked and did not testify whether there was a "causal relationship," much less a "direct or proximate causal relationship," between the injury and the disability. We cannot extract from the record in this case any evidence to the effect that the disability bore a direct or proximate causal relationship to the injury.

The appellant contends that the court in its general charge incorrectly defined "injury." The contention is made that the court did not define "injury" as that word is defined in the first paragraph of the syllabus in the case of **Dripps v. Industrial Commission, 165 Oh St 407,**

135 N. E. (2d) 873. The general charge was not as complete as it might have been, but the error, if any, was one of omission and not commission. Since the appellant did not bring this matter to the attention of the court, the error, if any, was waived. State of Ohio v. Tudor, 154 Oh St 249, 95 N. E. (2d) 385; Simko v. Miller, 133 Oh St 345, 13 N. E. (2d) 914; Case v. Carter, 103 Oh Ap 11, 15, 142 N. E. (2d) 670; State of Ohio v. Bryant, 105 Oh Ap 452, 455.

The appellant contends that the verdict was manifestly against the weight of the evidence. The point is made that the plaintiff's testimony upon cross-examination established that she did not sustain an "injury," and that final judgment should be entered for the defendant. This matter is embraced in assignments of error numbered three, four, five and six, which will be discussed together. The defendant claims that the plaintiff on cross-examination stated that the onset of her complaint appeared when she lifted her foot to operate the foot pedal of a punch press and pain struck her in the right hip. The record shows that she made this same complaint (1) in her original application, (2) to the investigator, (3) to a supervisor of the defendant company, (4) in a statement when she entered the company hospital, (5) in an application for group insurance, and (6) to the deputy administrator at the first hearing. Plaintiff admits that these statements were made, but at the trial testified that she had not been required to give a searching detailed description of the incident. On direct examination she testified that her usual employment consisted of standing before a bench and greasing panels of steel, but on the evening in question, she was asked to do a clipping operation at a punch press; that she was short in stature, being four feet, ten and one-half inches in heighth; that she was required to reach overhead for the panels and take them from a moving conveyor; that she had difficulty in taking a panel from the conveyor, which came loose with a jerk, causing her to slip and fall back heavily on her right foot; that when she returned to the press, she felt the pain in her hip. She stated that she felt pain when she attempted to lift her foot to operate the press. The evidence shows that the plaintiff's left leg was one and one-fourth inches shorter than the right leg.

Appellant cites Dripps v. Industrial Commission, 165 Oh St 407, 135 N. E. (2d) 873, and Winkler v. City of Columbus, 149 Oh St 39, 77 N. E. (2d), 461, in support of its contention that plaintiff has failed to establish that the injury was caused as the result of external and accidental means in the sense of being the result of a sudden mishap, occurring by chance, unexpectedly and not in the usual course of events. In the Winkler case, where the plaintiff testified one way on direct examination and another way on cross-examination, concerning the condition of a sidewalk, the court held that the answers on cross-examination constituted an admission against interests, or judicial admission, and granted final judgment for the defendant.

In the case at bar, we find no conflict in the narration of the facts leading up to the injury. The statement made repeatedly that she suffered pain in the hip when she attempted to operate the press is not in conflict with the testimony of the plaintiff in the trial, that she lost her balance in taking the panel off the conveyor, causing her to slip,

lose her balance and, as a consequence, place undue weight and strain on the right foot. The additional information is complementary to and explains the happening which followed. In our opinion, the rule in the Winkler case has no application.

The plaintiff having failed to prove a direct or proximate causal relationship between the injury and the disability, the trial court committed prejudicial error in overruling defendant's motion at the close of the evidence for a directed verdict, and in overruling defendant's motion for judgment notwithstanding the adverse verdict.

The judgment of the trial court is reversed. Final judgment will be entered for the defendant. Counsel will prepare the proper entry.

BRYANT, PJ, concurs.

## DISSENTING OPINION

By DUFFY, J.

The Ternstedt Division of the General Motors Corporation was the employer of Eva A. Neighbors, who filed a claim for compensation because of an injury she received while working for the above-named employer. The Bureau of Workmen's Compensation denied her claim; and on appeal to the Industrial Commission of Ohio, the order of the Administrator of the Bureau of Workmen's Compensation was reversed, and the claim was allowed. The employer appealed to the Common Pleas Court, where a trial before a jury was had and a verdict and judgment rendered for the employee, Eva A. Neighbors. The employer, General Motors Corporation, has appealed on questions of law from the Common Pleas Court judgment rendered on the jury's verdict.

The employer presented for the consideration of this court the following assignments of error:

"(1) The trial court committed prejudicial error in overruling defendant's objection to the hypothetical question asked Dr. Cowles.

"(2) The trial court committed prejudicial error in overruling defendant's motion to strike the answers of Dr. Cowles to the hypothetical question.

"(3) The trial court committed prejudicial error in overruling defendant's motion at the close of all the evidence that the jury be directed to return a verdict for the defendant.

"(4) The trial court committed prejudicial error in overruling defendant's motion for judgment in its favor notwithstanding the verdict.

"(5) The court committed prejudicial error in its general charge to the jury.

"(6) The verdict was manifestly against the weight of the evidence."

A recommendation for reversal of the judgment of the Common Pleas Court is based upon the failure by the employee to prove a direct or proximate causal relationship between the injury and the disability and, therefore, the trial court should have sustained the defendant's motion for a directed verdict at the close of the evidence and should have sustained defendant's motion for judgment notwithstanding the verdict. The failure to do so was prejudicial error.

The hypothetical question in this case was asked of the attending

physician, who had previously testified to his finding following his initial examination of the employee on April 9, 1956, and his finding was "that she had a strain of the hip joint with muscle spasm and the usual associated symptoms." He further testified that she was able to resume light work on approximately September 19, 1956, and testified as to his treatment during the period of disability.

In her testimony the employee described the manner in which she was injured during the course of her employment and described the pain which she felt following the injury. Her testimony, in part, was as follows:

"* * * I raised up on this panel, just give it a jerk to get it off and in doing so I lost my balance, come back on my right foot, I felt a pain in my hip then, so I had the panel in my hand and just stood there with the panel in my hand down on the floor like you would a cane and rubbed my hip for - - oh, quite a while, maybe 10, 15 minutes or that is what it seemed to me, and then I walked over and put one clip on my panel and was going to put the second one on when I started to raise my foot to hit the pedal I felt this sharp pain from the groin right down to the knee and I couldn't raise my foot up off the floor, so I stood there for .a while and I didn't know the girls in the line other than by - - oh, by sight, so I walked back to the girl on the machine just in back of me and told her that I couldn't lift my foot up off the floor and I had a pain * * *."

The employee then testified that she went to the employer's First Aid Department and remained there from approximately 9:30 o'clock until 11 o'clock. The employee also testified that she worked the rest of that week and went every night to the First Aid Department, where the nurse put heat on her; that because the condition did not improve, she saw Dr. Cowles.

The jury, in addition to the verdict, were required to answer special interrogatories which were as follows:

"No. 1.

"Did Eva A. Neighbors sustain disability while at her work at General Motors Corporation, Ternstedt Division on March 26, 1956?"

All twelve jurors answered that question in the affirmative.

"No. 2.

"If you find that Eva A. Neighbors did sustain disability at her work on March 26, 1956, state what was the direct cause of that disability."

All twelve jurors answered that question as follows:

"While removing panel from Monorail on tip toe, she in stretching, to remove said panel lost her balance in a backward motion, causing her to land heavily on her right foot. Which in our opinion and final verdict, resulted in said disability of plaintiff."

The attending physician in this case did testify that there was a strain, and it would not be improper for the jury, in considering the description of the injury and the description of the pain and the treatments at the employer's First Aid Station and the treatments by Dr. Cowles, to find that there was a strain of the hip resulting in disability to the employee following an accidental injury received in the course of and arising out of her employment. It is necessary for the

injured employee to show by a preponderance of the evidence, medical or otherwise, not only that her injury arose out of and in the course of her employment, but that a direct or proximate causal relationship existed between her injury and her harm or disability. See **Fox v. Industrial Commission, 162 Oh St 569.**

I do not feel that the asking of a hypothetical question to the attending physician was necessary in this case to show a direct or proximate causal relationship between the injury and the disability. The attending physician reported his findings as a strain of the hip joint with muscle spasm, which is not such a disability as could be established by medical testimony only. From the employee's description of the occurrence and resulting pain, the jury could well have concluded that the injury caused the claimed disability of pain in the hip area. It should be noted, too, that the doctor, in his answer to the hypothetical question, did state that he had an opinion and that his opinion was, "I think it could and did." "Could" relates only to possibilities but is still admissible evidence. "Did" is a definite and certain opinion and would be sufficient to establish by medical testimony the direct causal relationship between the described injury and the described disability; so that if the hypothetical question was proper, the relationship was established by the answer.

For these reasons I feel that the verdict and judgment should be sustained.